JAMES H. MARSHBURN, AND WIFE, VIRGINIA T. MARSHBURN v. ASSOCIAT-
ED INDEMNITY CORPORATION

No. 864SC743

(Filed 17 February 1987)

1. **Insurance § 137— time limitation for filing claim—failure to discover damage until after time limitation has run**

   The phrase, "inception of the loss," when used in a policy of insurance, means that the policy limitation period runs from the date of the occurrence of the event out of which the claim for recovery arose, and a claim filed after the contractual time limitation has expired is barred, regardless of its merit, unless the insurer, by its conduct, waives or is estopped from relying upon the limitation provisions of the policy. Furthermore, the insured's failure or inability to discover damage resulting from the insured-against casualty until after the contractual limitations period has run is immaterial and does not operate to toll or restart the limitations period.

2. **Insurance § 137— time limitation for filing claim—discovery of additional damages—accrual of cause of action**

   There was no merit to plaintiffs' contentions that, under the provisions of N.C.G.S. § 1-52(12) and N.C.G.S. § 1-52(16), their cause of action against defendant on a fire insurance policy for damages from a 21 July 1979 lightning strike did not accrue until the discovery of the additional damages on 2 September 1982 and that this suit, filed 21 February 1985, was properly instituted within three years of that accrual date, since, by enacting N.C.G.S. § 1-52(12), the General Assembly intended only to include the standard fire insurance policy limitation period in the comprehensive list of actions which are generally subject to three year periods of limitation, and the standard fire insurance policy limitation provision contained in N.C.G.S. § 1-52(12) and N.C.G.S. § 58-176(c) and reproduced in plaintiffs' policy of homeowners' insurance, constituted a limitation period "otherwise provided by statute" which precluded the applicability of N.C.G.S. § 1-52(16) to the present case.

3. **Insurance § 137— lightning damage—accrual of cause of action—latent damages—statute of limitations not restarted**

   Even if the provisions of N.C.G.S. § 1-52(16) applied to plaintiffs' action, it was still filed after the limitations period had expired where plaintiffs' cause of action was grounded upon damage to their home allegedly caused by a 21 July 1979 lightning strike; the immediate and obvious damage to the structure, for which they received payment from defendant, made it apparent to defendants that their home had been damaged, and their cause of action against defendants accrued at that time; and the fact that evidence of latent damages was discovered more than three years later did not restart the statutory limitations period.

**4. Insurance § 137.1— lightning damage—action barred by statute of limitations
—insurer not estopped from invoking statute of limitations**

There were no questions of material fact as to whether defendant insurer
was estopped from invoking any limitation period which might operate to bar
this action under a homeowners' insurance policy, since the bar of the contrac-
tual limitations provision had already become complete prior to plaintiffs'
discovery of the additional damage, and any conduct on the part of defendant
insurer with regard to that damage could not have induced plaintiffs' failure to
institute a timely action under the policy.

**5. Unfair Competition § 1— failure to settle insurance claim alleged—no unfair
and deceptive trade practice**

Failure to allege more than a single refusal by a defendant insurance com-
pany to settle a claim is fatal to a cause of action under N.C.G.S. § 58-54.4(11)
for unfair and deceptive trade practices.

**6. Unfair Competition § 1— method of investigating and settling insurance claim
—no unfair or deceptive acts**

Plaintiffs' claim for unfair or deceptive acts in violation of N.C.G.S.
§ 75-1.1 must fail where there was no showing of any facts which would create
any genuine issue that the manner in which defendant insurer conducted its in-
vestigation, or its subsequent denial of plaintiffs' claim, was unethical, op-
pressive or deceptive in any way.

APPEAL by plaintiffs from *Phillips, Herbert O., Judge.* Judg-
ment entered 13 May 1986 in Superior Court, ONSLOW County.
Heard in the Court of Appeals 11 December 1986.

In October 1978, defendant issued to plaintiffs a standard
homeowners insurance policy insuring plaintiffs' residence located
at Route #1, Box 190A, Maple Hill, North Carolina. The policy in-
cluded coverage against direct loss to plaintiff's property caused
by fire or lightning. The policy specifically excluded coverage of
any loss caused by, resulting from, contributed to, or aggravated
by surface water or water below the surface of the ground. The
policy provided that no action for the recovery of any claim could
be maintained "unless commenced within three years next after
inception of the loss."

On 21 July 1979, plaintiffs' home was struck by lightning.
The immediate and obvious damage to the house included smoke
damage, scorched walls, damage to the heating system and televi-
sion, and cracked and loosened bricks on a rear windowsill. Plain-
tiffs reported the incident to defendant and upon adjustment of
the loss, received from defendant a check in the amount of

$643.65 as full payment of all claimed damages resulting from the lightning strike.

In September 1982, Mr. Marshburn noticed cracks along the mortar joints and through some of the bricks immediately below the windowsill damaged by the lightning. He notified defendant that additional damage caused by the lightning had become apparent and requested that the loss be readjusted. Defendant's adjuster, J. A. Renfrow, inspected plaintiffs' premises on 20 October 1982. Defendant thereafter retained David Brown, an engineer with Research Engineers, Inc., to inspect plaintiffs' residence. On 17 January 1983, Renfrow contacted Mr. Marshburn, requesting that he dig a trench down to the concrete footing to expose the alleged lightning damage. Mr. Marshburn protested that water would collect in the open trench, but complied with Renfrow's request. A considerable amount of rain fell in the days which followed, collecting in the trench until Mr. Marshburn drained it prior to Brown's inspection of the footing on 31 January 1983. On 27 April 1983 Renfrow notified plaintiffs that their claim for damages was denied on the basis of Brown's conclusion that the cracks and separations in the footings and brickwork were "the result of water intrusion at the foundation and drainage problems which rendered the subgrade unstable."

In March 1984, plaintiffs contacted K. B. Hurst, a contractor, and Robert M. Sheegog, an engineer, in an effort to refute Brown's conclusion. Hurst was of the opinion that the lightning had cracked a concrete footing under the house, weakening the structure, and that the full extent of the damage done had not become apparent until the building had a chance to settle. Apparently Sheegog disagreed with Brown's opinion about soil conditions and water intrusion. Plaintiffs forwarded this information to defendant in April 1984. By letter dated 15 June 1984, defendant confirmed the denial of plaintiffs' claim for additional damage, stating (1) that the damage was not caused by lightning, and (2) that the time period for filing claims and instituting legal action had expired.

Plaintiffs brought this action on 21 February 1985 seeking payment under the homeowners policy for the additional damages allegedly caused by the lightning, and alleging, in a second count, that defendant, by its handling of plaintiffs' insurance claim, had

engaged in unfair and deceptive trade practices in violation of Chapters 58 and 75 of the General Statutes. Defendant denied the material allegations of the complaint, pleaded the statute of limitations and the provisions of the policy in defense, and moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. Defendant offered in support of its motion the affidavit of J. A. Renfrow and the plaintiffs' policy of homeowner's insurance. In opposition, plaintiffs filed affidavits of James H. Marshburn, K. B. Hurst and Marvin Swinson, who estimated the cost of repairs to be $27,000.00. Plaintiffs appeal from the trial court's 10 May 1986 order granting defendant's summary judgment motion.

*Jeffrey S. Miller for plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Ronald C. Dilthey and Reid Russell, for defendant appellee.*

MARTIN, Judge.

The primary question presented by the parties to this appeal is whether plaintiffs' action to recover additional damages allegedly caused by the lightning is barred because it was not brought within the time provided by the insurance policy and by the applicable statute of limitations. We conclude that the action is barred and, for the reasons hereinafter stated, affirm the order of the trial court granting summary judgment for defendant.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The burden of establishing the lack of any triable issue of material fact is on the party moving for summary judgment. *Texaco, Inc. v. Creel*, 310 N.C. 695, 314 S.E. 2d 506 (1984). When a defendant has properly pleaded the applicable statute of limitations, however, the burden is on the plaintiff to show that the action was instituted within the requisite period after accrual of the cause of action. *Little v. Rose*, 285 N.C. 724, 208 S.E. 2d 666 (1974). In ruling on a motion for summary judgment, the trial court must carefully scrutinize the moving party's papers and resolve all inferences against him. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976).

Marshburn v. Associated Indemnity Corp.

Generally, the question of whether a cause of action is barred by the statute of limitations is a mixed question of law and fact. *Ports Authority v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 240 S.E. 2d 345 (1978). When the statute of limitations is properly pleaded and the facts of the case are not disputed resolution of the question becomes a matter of law and summary judgment may be appropriate. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E. 2d 350 (1985).

Plaintiffs first contend that their claim for damages is not barred by either the time limitation provided for in the insurance policy or by the three-year statute of limitations. We conclude that the action is barred by both the contractual limitation and the statute of limitations.

The pertinent provision of the insurance policy provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within three years next after inception of the loss." The foregoing provision complies with the "Standard Fire Insurance Policy for North Carolina" prescribed by G.S. 58-176 and is a valid contractual limitation binding upon and enforceable between the parties. Failure to bring an action on the policy within the specified period bars any recovery unless the contractual limitation is waived by the insurer. *Avis v. Hartford Fire Ins. Co.*, 283 N.C. 142, 195 S.E. 2d 545 (1973).

Our Supreme Court has construed the word "inception," when used as in this case, as follows:

> In this connection the word "inception" as defined by Webster means "act or process of beginning; commencement, initiation." Hence as used above "inception" necessarily means that the beginning, the commencement, the initiation of the loss was that caused by fire.

*Boyd v. Bankers & Shippers Ins. Co.*, 245 N.C. 503, 509, 96 S.E. 2d 703, 707 (1957). With respect to the term "inception of the loss," the Court has stated:

> The provision contained in property insurance policies requiring action to be instituted within "twelve months next after inception of the loss" has been construed by the majority of

jurisdictions to mean that the policy limitation runs from the date of the occurrence of the destructive event giving rise to the claim of liability against the insurer. (Citations omitted.)

*Avis, supra* at 151, 195 S.E. 2d at 550.

[1]   We therefore hold, in accord with what appears to be the majority view, that the phrase "inception of the loss," when used in a policy of insurance as in the present case, means that the policy limitation period runs from the date of the occurrence of the event out of which the claim for recovery arose. Annot., 24 A.L.R. 3d 1007, 1059 (1969 & 1986 Supp.); 18A Couch on Insurance 2d § 75:88 (Rev. ed. 1983). *See, e.g., Closser v. Penn Mut. Fire Ins. Co.,* 457 A. 2d 1081 (Del. 1983); *Gremillion v. Travellers Indemnity Co.,* 256 La. 974, 240 So. 2d 727 (1970); *Margulies v. Quaker City Fire & Marine Ins. Co.,* 276 A.D. 695, 97 N.Y.S. 2d 100 (1950). A claim filed after the contractual time limitation has expired is barred, regardless of its merit, unless the insurer, by its conduct, waives or is estopped from relying upon the limitation provision of the policy. *Meekins v. Aetna Ins. Co.,* 231 N.C. 452, 57 S.E. 2d 777 (1950). The insured's failure or inability to discover damage resulting from the insured-against casualty until after the contractual limitations period has run is immaterial and does not operate to toll or restart the limitations period. *See, Segar Glove Corp. v. Aetna Ins. Co.,* 317 F. 2d 439 (7th Cir.), *cert. denied,* 375 U.S. 921, 84 S.Ct. 266, 11 L.Ed. 2d 165 (1963); *Thames Realty Corp. v. Massachusetts Fire & Marine Ins. Co.,* 16 Misc. 2d 747, 184 N.Y.S. 2d 170 (1959).

In the present case, it is undisputed that damage allegedly resulting from the 21 July 1979 lightning strike constitutes the basis of plaintiffs' claim under the policy of insurance. The "inception" of plaintiffs' loss, therefore, occurred on 21 July 1979 and, under the terms of the policy, any suit or action on claims for damage must have been commenced within three years of that date. Thus, in order to recover for damages caused by the lightning, plaintiffs were required by the policy to file suit on or before 21 July 1982. Plaintiffs' discovery of additional damage allegedly resulting from the lightning strike did not occur until 2 September 1982, approximately six weeks after the limitation period had already expired. Their suit to recover for those damages was instituted 21 February 1985, more than five years

Marshburn v. Associated Indemnity Corp.

after the inception of their loss. Plaintiffs' action was therefore barred by operation of the policy limitation provision and defendant was entitled to summary judgment as a matter of law.

[2]    Plaintiffs contend, however, that the contractual limitations provision does not govern the disposition of their claim because of the nature of the loss they suffered. Rather, they assert that the applicable period of limitation is that provided for by G.S. 1-52(12) and G.S. 1-52(16). They argue that under those provisions, their cause of action against defendant did not accrue until the discovery of the additional damages on 2 September 1982 and that this suit, filed 21 February 1985, was properly instituted within three years of that accrual date.

G.S. 1-52 prescribes a three-year period for the commencement of an action:

(12) Upon a claim for loss covered by an insurance policy which is subject to the three-year limitation contained in lines 158 through 161 of the Standard Fire Insurance Policy for North Carolina, G.S. 58-176(c).

Another subsection of the same statute provides:

(16) Unless otherwise provided by statute, for personal injury or physical damage to claimant's property, the cause of action, except in causes of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

Plaintiffs argue that these provisions indicate that "the only possible legislative interest in enacting G.S. § 1-52(12) was to make it clear that G.S. § 1-52(16) governed the determination of when a claim on the policy accrued." They assert that in cases such as this one, where damage does not become apparent until a period of time has passed, the accrual provisions of G.S. 1-52(16) must be read into the policy limitation provision so that the limitations period does not begin to run until the damage is, or reasonably should be, discovered. We disagree.

G.S. 1-52(12) came before the General Assembly as "An act to insert the three-year limitation contained in the standard fire insurance policy into the list of three-year limitations contained in G.S. 1-52" and became effective 1 January 1972. 1971 Sess. Laws, c. 939. It is clear, then, that by enacting G.S. 1-52(12), the General Assembly intended only to include the standard fire insurance policy limitation period in the comprehensive list of actions which are generally subject to three-year periods of limitation and to provide a cross-reference between general statutory periods of limitation contained in G.S. 1-52, and the more specific limitation provisions of the Standard Fire Insurance Policy for North Carolina set out in G.S. 58-176(c).

G.S. 1-52(16) became effective 1 October 1979. 1979 Sess. Laws, c. 654, s. 8. Its enactment was wholly independent of the provisions of G.S. 1-52(12). The language of the statute does not require that G.S. 1-52(12) be applied in conjunction with or subject to the provisions of G.S. 1-52(16) and we decline to read such a requirement into the language of the statute without any clear authority for doing so. Moreover, G.S. 1-52(16) provides, by its own express terms, that it is to be applied "unless otherwise provided by statute." In our view, the Standard Fire Insurance Policy limitation provision, contained in G.S. 1-52(12) and G.S. 58-176(c) and reproduced in plaintiffs' policy of homeowners insurance, constitutes a limitation period "otherwise provided by statute" which precludes the applicability of G.S. 1-52(16) to the present case.

[3] However, even assuming, *arguendo*, that the provisions of G.S. 1-52(16) apply to the facts of the present case, plaintiffs' action was still filed after the limitations period had expired. In *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 69 N.C. App. 505, 317 S.E. 2d 41 (1984), *aff'd*, 313 N.C. 488, 329 S.E. 2d 350 (1985), plaintiff brought suit for breach of contract, negligence and unjust enrichment in connection with defendant's construction of a defective roof. Defendants asserted the statute of limitations, arguing that more than three years had elapsed between the time plaintiffs first discovered leaks and the time suit was filed. In response, plaintiff argued that the complaint was based upon evidence of "blistering" in the roof, caused by moisture trapped between the layers of roofing material, which developed well after the first discovery of leaks. Plaintiff asserted that the earlier leaks were not of the same character or extent as those on which

the complaint was based and that the statute of limitations should run from the subsequent date of discovery of the blistering.

This Court disagreed, stating that it was irrelevant that the early leaks were not of the same extent as the subsequent blistering because

> [U]nder G.S. 1-52(16) a cause of action "shall not accrue until bodily harm to claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant. . . ." This statute serves to delay the accrual of a cause of action in the case of latent damages until the plaintiff is aware he has suffered damage, *not until he is aware of the full extent of the damages suffered.*

*Pembee* at 508-09, 317 S.E. 2d at 43. (Emphasis added.)

G.S. 1-52(16) modifies the common law rule on accrual of actions only insofar as it requires discovery of physical damage before a cause of action can accrue. "It does not change the fact that once some physical damage has been discovered the injury springs into existence and completes the cause of action." *Pembee* at 509, 317 S.E. 2d at 43. The Supreme Court affirmed the decision, stating,

> as soon as the injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run . . . . The fact that further damage which plaintiff did not expect was discovered does not bring about a new cause of action, it merely aggravates the original injury. (Citations omitted.)

*Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 493-94, 329 S.E. 2d 350, 354 (1985).

In the present case, plaintiff's cause of action was grounded upon damage to their home allegedly caused by the 21 July 1979 lightning strike. The immediate and obvious damage to the structure, for which they received payment from defendant, made it apparent to plaintiffs that their home had been damaged, and their cause of action against defendants accrued at that time. The fact that evidence of latent damages was discovered more than three years later does not restart the statutory limitations period.

[4] Plaintiffs further contend that questions of material fact exist as to whether defendant is estopped from invoking any limitation period which might operate to bar this action. Plaintiffs alleged that defendant reopened their initial claim for damages on 22 September 1982 and assigned Renfrow to inspect the house. Renfrow thereafter requested that Mr. Marshburn dig out around the damaged footing so that a professional engineer could inspect the damage. Plaintiffs argue that as a result of Renfrow's contacts and assurances, Mr. Marshburn performed a considerable amount of labor, expended money to hire a professional engineer, and was otherwise put "through the hoops" only to find the claim denied by reason of the passage of time.

It is true that an insurer can be estopped, by its own conduct or words during the limitations period, from asserting the contractual limitation period as a bar to plaintiff's action. *Meekins, supra.* There is nothing in the record, however, that could estop defendant from asserting this defense. The lightning struck plaintiffs' home on 21 July 1979. More than three years elapsed and the contractual period of limitation had expired before the occurrence of any of the acts of defendant's adjuster relied upon by plaintiff to establish an estoppel. Inasmuch as the bar of the contractual limitations provision had already become complete prior to plaintiffs' discovery of the additional damage, any conduct on the part of the insurance company with regard to that damage could not have induced plaintiffs' failure to institute a timely action under the policy. These assignments of error are overruled.

[5] Plaintiffs next contend that the trial court erred by entering summary judgment against them with respect to their claim that defendants engaged in unfair and deceptive trade practices. In their complaint, plaintiffs alleged that the defendant, through its agent Renfrow committed unfair and deceptive acts in violation of G.S. 58-54.4(11) and G.S. 75-1.1. Plaintiffs neither alleged nor offered any proof, however, that defendant had done any act "with such frequency as to indicate a general business practice." G.S. 58-54.4(11). Failure to allege more than a single refusal by a defendant insurance company to settle a claim is fatal to a cause of action under G.S. 58-54.4(11). *Smith v. King*, 52 N.C. App. 158, 277 S.E. 2d 875 (1981). The facts, as alleged and as established by affidavit, fail to create a genuine issue concerning the frequency of

defendant's actions and plaintiffs' claim under G.S. 58-54.4(11) must fail.

[6] Plaintiffs' claim for relief under Chapter 75 must also fail. G.S. 75-1.1 provides, in pertinent part, that "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful" and has been held to provide a remedy for unfair and deceptive trade practices in the insurance industry. *Phillips v. Integon Corp.*, 70 N.C. App. 440, 319 S.E. 2d 673 (1984).

The terms "unfair" and "deceptive" were defined by the Supreme Court in *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 262-63, 266 S.E. 2d 610, 621 (1980).

> What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has in the marketplace. . . . The concept of 'unfairness' is broader than and includes the concept of 'deception.' A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. (Citations omitted.)

Our review of the record does not reveal the existence of any facts which would create any genuine issue that the manner in which defendant conducted its investigation, or its subsequent denial of plaintiffs' claim, was unethical, oppressive or deceptive in any way. These assignments of error are overruled.

The order of the trial court allowing defendant's motion for summary judgment is

Affirmed.

Judges WELLS and PARKER concur.