**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-1976**

_____

MICHELLE WILLIAMS, f/k/a Michelle Dargan,

          Plaintiff - Appellant,

     v.

LENDMARK FINANCIAL SERVICES, INC.,

          Defendant - Appellee.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore.  William D. Quarles, Jr., District Judge.  (1:13-cv-01740-WDQ)

_____

Argued:  May 10, 2016                    Decided:  July 8, 2016

_____

Before NIEMEYER and WYNN, Circuit Judges, and Thomas E. JOHNSTON, United States District Judge for the Southern District of West Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Johnston joined.

_____

**ARGUED**:  Cory Lev Zajdel, Z LAW, LLC, Reisterstown, Maryland, for Appellant.  Brian L. Moffet, MILES & STOCKBRIDGE P.C., Baltimore, Maryland, for Appellee.  **ON BRIEF**:  Megan B. Burnett, MILES & STOCKBRIDGE P.C., Baltimore, Maryland, for Appellee.

_____

NIEMEYER, Circuit Judge:

In connection with a personal loan of roughly $2,600 that Lendmark Financial Services, Inc., a Georgia corporation, made to Michelle Williams, a Maryland resident, Williams was charged and paid numerous late fees. In this action she challenges, under Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law § 12-1001 et seq., the manner in which Lendmark charged and applied those late fees. After the district court entered judgment for Lendmark, Williams filed this appeal.

She contends (1) that Lendmark violated CLEC and the promissory note that she signed by applying her monthly payments first to late charges, then to interest, and finally to principal; (2) that it violated CLEC and the note by imposing late charges on certain timely payments when it concluded that its application of her monthly payments to satisfy earlier late fees rendered the amount of the monthly payments insufficient to pay the interest and principal due; and (3) that it violated CLEC and the note by prematurely "assessing" late charges on its accounting records by posting them after the close of business on the fifth day of the five-day grace period provided for in the note, rather than on the following day.

2

For the reasons that follow, we affirm the district court's dismissal of Williams' first and third claims and reverse the dismissal of her second claim.

I

In November 2009, Williams borrowed $2,620.72 from Lendmark, executing a promissory note in favor of Lendmark. The note required Williams to pay 36 monthly installments of $102.23 each, representing an annual interest rate of 20.24%. In the note, Williams agreed that if she did not pay a monthly installment by the first day of each month plus a five-day grace period, she would have to pay a late charge of 10% of the late installment or $25, whichever was the greater. The note provided that all payments were to be applied first to late charges, then to accrued interest, and finally to principal.

Williams had three methods by which to make payments: (1) by making the payments in person at Lendmark branch offices, which were open generally from 8:30 a.m. to 5:30 p.m.; (2) by making the payments over the telephone to Lendmark branch offices during business hours; and (3) by making the payments by mail. Thus, there were no means by which Lendmark could receive a payment on a given day after the close of business. Accordingly, in administering the loan, Lendmark posted late

charges on its accounting records after the close of business on the fifth day of the five-day grace period.

For the first three months -- January to March 2010 -- Williams made timely monthly payments of $106. No explanation is given for why she paid $106 each month rather than the $102.23 specified in the note. In April 2010, Williams made her payment late and was charged a late fee of $25. From then until December 2010, she was charged a late fee of $25 three more times -- in July, September, and October. In December 2010, however, she made a payment of $106 within the grace period. Nonetheless, Lendmark charged her a $25 late fee because it applied that month's payment first to prior late fees and then to interest and principal, thereby, according to Lendmark, leaving her with only a partial payment of interest and principal. The same circumstances occurred for her February 2011 payment. After March 2011, Williams' payments were mostly made in amounts less than the $102.23 specified in the note, and she incurred late fees on each of those occasions. Long after the maturity of the note, Williams finally paid off the entire loan, having been charged more than 40 late fees.

Williams commenced this action in the Circuit Court for Baltimore City, alleging that Lendmark "charged numerous late fees . . . in violation of CLEC," the note, and other state law obligations. Lendmark removed the case to federal court under

4

diversity jurisdiction and thereafter filed a motion to dismiss the complaint. The district court granted the motion as to all claims except Williams' claim that Lendmark "assessed late fees . . . prior to the expiration of her 5 day grace period," in breach of the note's terms and of CLEC. After full discovery, however, the district court granted Lendmark summary judgment, dismissing this claim also.

From the district court's judgment dated July 27, 2015, Williams filed this appeal, raising three issues: (1) whether Lendmark's application of installments first to late fees, then to interest, and finally to principal violated CLEC and the note; (2) whether Lendmark's imposition of late fees on installments made in December 2010 and February 2011, which were timely made, violated CLEC and the note; and (3) whether Lendmark's posting of late fees on its books after the close of business on the fifth day of the five-day grace period violated CLEC and the note.

II

Williams contends first that the district court erred in approving Lendmark's application of Williams' payments "first toward late fees, then toward interest and last toward principal." She argues that the practice of applying payments first to late fees violated CLEC, Md. Code Ann., Com. Law

5

§ 12-1008(c) (requiring that "all payments by the borrower shall be applied to satisfaction of <u>scheduled payments</u> in the order in which they become due" (emphasis added)), because late fees were "not part of any 'scheduled payment' of principal and interest."

Lendmark contends that its practice of applying Williams' payments "'first to late charges then to accrued interest and then to the principal' . . . was consistent with not only the terms of her promissory note but also . . . § 12-1008 of CLEC," which authorizes a credit grantor to charge a late fee if "the agreement, note, or other evidence of the loan permits," Md. Code Ann., Com. Law § 12-1008(b). We agree.

CLEC expressly allows a creditor to impose late charges, Md. Code Ann., Com. Law § 12-1008(a)(2)(i), but it limits the manner in which such late charges may be imposed, providing:

> (b) In the case of a loan to a consumer borrower, no late or delinquency charge may be charged <u>unless the agreement, note, or other evidence of the loan permits</u>. No more than 1 late or delinquency charge may be imposed for any single payment or portion of payment, regardless of the period during which it remains in default.

> (c) For the purposes of subsection (b) of this section, all payments by the borrower shall be applied to satisfaction of scheduled payments <u>in the order in which they become due</u>.

<u>Id.</u> § 12-1008(b), (c) (emphasis added).

In this case, the promissory note that Williams signed did permit Lendmark to impose late charges, as authorized by CLEC:

6

> Late Charge: If [Williams] do[es] not pay any installment within 5 days after its scheduled or deferred due date, [Williams] agree[s] to pay a late charge of the greater of 10% of the unpaid amount of the installment or $25.00. Only one late charge shall be charged on any installment or part of an installment. For the purpose of computing late charges, all payments by [Williams] shall be applied to scheduled payments in the order they become due. The late charge will be in addition to daily accrued interest.

To make her argument, Williams urges an interpretation of CLEC and the note that would require that each payment be applied only to interest and principal, leaving for some later unspecified date the payment of late charges. But her argument is not supported by either the language of the note or by CLEC.

Contrary to her suggestion that a "scheduled payment" can only include interest and principal, the note simply defines a "monthly payment" or "monthly installment" to be a payment of $102.23, payable the first day of each month. Nowhere does it break down the $102.23 amount into components.

To be sure, the monthly payment amount of $102.23 was calculated based on the amortization of principal and the applicable interest rate over 36 monthly payments. But it does not follow that Lendmark must apply each monthly payment only to principal and interest. Indeed, what Williams agreed in the note to pay each month is separate from how Lendmark agreed to apply those payments.

7

In an effort to render her obligation to make monthly payments of $102.23 somehow inapplicable to prior late charges, Williams relies on language in the note that "all payments by [her] shall be applied to scheduled payments in the order they become due." (Emphasis added). She points to similar language in CLEC. See Md. Code Ann., Comm. Law § 12-1008(c) (providing that "all payments by the borrower shall be applied to satisfaction of scheduled payments in the order in which they become due" (emphasis added)). But Williams takes the language from both the note and CLEC out of context. In both locations, the language was included for the purpose of calculating and applying late charges. Thus, the note provided, "For the purpose of computing late charges, all payments by [Williams] shall be applied to scheduled payments in the order they become due." (Emphasis added). And CLEC provides similarly, "For the purposes of [preventing more than one late charge on a monthly installment], all payments by the borrower shall be applied to satisfaction of scheduled payments in the order in which they become due." (Emphasis added). Thus, not only is the language on which Williams relies included only for the purpose of defining how to calculate and apply late charges, the language itself recognizes the right to apply payments to satisfy late charges. Williams provides no explanation as to how the note and CLEC would provide for her discharge of her obligation to

8

pay late charges.  That omission is yet more glaring in view of the fact that the note provides explicitly that "[e]ach payment will be applied first to late charges, then to accrued interest and then to the principal."  (Emphasis added).

In short, under the note and consistent with CLEC, Williams would satisfy her obligation to Lendmark simply by paying $102.23 by the first day of each month or within the grace period.  And Lendmark would satisfy its obligation to Williams by applying each payment first to late charges, then to accrued interest, and finally to principal.  Accordingly, if Williams' payment were late or were made in an amount less than $102.23, she would incur a late charge, which would be paid from the next payment.  In that case, however, the principal would not be fully repaid after 36 monthly payments because of the payments' application to late charges, and Williams would have to continue making payments until she paid the principal in full.  Indeed, the note so provides:  "If any portion of the balance remains unpaid after maturity of this note, whether as originally scheduled or accelerated, [Williams] will pay interest on the remaining balance until paid in full at the Interest Rate."  And in this case, Williams did continue making payments beyond the 36 months, eventually repaying the note in full.

We conclude, therefore, that Lendmark's practice of applying payments first to late charges was legal, both under CLEC and under the terms of the note.

III

Williams also contends that, with respect to her December 2010 and February 2011 payments, which were timely made, Lendmark charged and collected late fees in violation of CLEC and the note when it took the position that when these payments were applied to late fees from earlier months, they became insufficient to pay fully the interest and principal due. She concludes, "In perpetuating this servicing tactic, Lendmark was able to assess and collect multiple late fees from Williams that it was not entitled to assess or collect under CLEC (i.e., December 2010; February 2011 late fees)."

Lendmark contends that even though the December 2010 and February 2011 payments were in excess of $102.23 and were timely made, they "were not for the amounts due" because she still owed late fees imposed in earlier months and, when those fees were satisfied from the payment, the remainder amounted only to a partial payment, thereby triggering the late fees.

We conclude that Lendmark's practice of charging late fees solely because payments were applied first to earlier late fees constitutes an improper collection of late fees, both because

10

the note did not require monthly payments of amounts in excess of $102.23 and because the charging of late fees based on application of an otherwise conforming payment to prior late fees amounted to the collection of multiple late fees for a single installment, in violation of both CLEC and the note.

First, while Lendmark concedes that Williams' December 2010 and February 2011 payments exceeded the $102.23 required amount (she paid $106 each month) and that they were timely made, it argues in effect that Williams owed more than $102.23 in those months because she had accrued late charges during previous months. This argument, however, again confuses the note's specification of the amount of payment with its authorization as to how to apply each payment. Nowhere in the note is the monthly payment defined to be more than $102.23. To be sure, if Williams had a past-due late charge, the payment for the next month would be applied first to that late charge. But that provision does not support a contention that the next month's payment of $102.23 was insufficient in amount.

Moreover, under Lendmark's construction, the December 2010 and February 2011 payments were only partial payments because the application of prior late charges caused Williams to pay an insufficient amount to amortize principal and pay interest. The effect of this argument would be to impose a late charge because of, and only because of, the application of a payment to a

11

previously imposed late charge, effectively compounding or pyramiding late charges. We conclude that this interpretation violates both the provisions of CLEC and the terms of the promissory note. CLEC provides that "[n]o more than 1 late or delinquency charge may be imposed for any single payment or portion of payment, regardless of the period during which it remains in default." Md. Code Ann., Com. Law § 12-1008(b). And the note itself provides, parroting CLEC, that "[o]nly one late charge shall be charged on any installment or part of an installment." Yet, the only basis that Lendmark had for charging late charges in December 2010 and February 2011 was its application of those otherwise conforming payments to satisfy prior late charges, effectively imposing multiple late charges for the same installment.

While it is true, as we hold above, that Lendmark was entitled to apply each payment that Williams made "first to late charges, then to accrued interest and then to the principal" without contravening § 12-1008, when this practice resulted in more than one late charge being imposed for Williams' failure to make a scheduled payment, then it violated § 12-1008. The charges Lendmark imposed in December 2010 and February 2011, and perhaps in other months, despite Williams' having made those payments before the end of the grace period, certainly multiplied late charges, thus violating CLEC and the note.

12

Our conclusion with respect to the December 2010 and February 2011 payments is consistent with Williams' argument that 16 C.F.R. § 444.4, a regulation promulgated by the Federal Trade Commission, bars "pyramiding late fees and inflating interest." Lendmark, however, has filed a motion to strike this argument because Williams failed to assert it before her reply brief, depriving the district court of the opportunity to rule on it in the first instance and Lendmark of the opportunity to address it. Although Williams should have cited 16 C.F.R. § 444.4 earlier, we need not assess the merits of Lendmark's motion to strike because we reach our conclusion on this late-charge issue apart from any reliance on that regulation. Accordingly, we deny Lendmark's motion as moot.[*]

Thus, we conclude that Lendmark was not entitled to charge a late fee in December 2010 or February 2011, or in any month in which Williams paid an installment timely and in full. The payments that Williams made in December 2010 and February 2011 of $106 exceeded the $102.23 amount specified in the note and each payment was timely made.

Because we hold that Williams' complaint alleging these facts states a plausible claim for relief, at least with respect to the December 2010 and February 2011 payments, we reverse the

---

[*] We also deny Williams' motion to certify the question to the Court of Appeals of Maryland.

13

district court's dismissal of this claim and remand for further proceedings.

IV

Finally, Williams contends that Lendmark violated CLEC and the note by prematurely "assessing" late fees, posting them after the close of business on the fifth day of the grace period rather than waiting until the following day. She argues that a "day" of the grace period consists of a full 24-hour period.

Lendmark contends that because it was not possible for Williams to make payments after the close of business on the fifth day of the grace period, any payment not made by the close of business on that day was, in effect, late.

CLEC permits a creditor to charge a late fee to a borrower if "the agreement, note, or other evidence of the loan permits." Md. Code Ann., Com. Law § 12-1008(b). Therefore, whether Lendmark violated CLEC in the manner Williams alleges becomes a question of contract interpretation based on the text of the promissory note. And the promissory note in this case provides:

> Late Charge: If [Williams] do[es] not pay any installment within 5 days after its scheduled or deferred due date, [she] agree[s] to pay a late charge of the greater of 10% of the unpaid amount of the installment or $25.00.

In effect, this provision simply provides that Lendmark may charge Williams a late fee if she does not pay "any installment

14

within 5 days after its scheduled or deferred due date." When Lendmark booked or assessed such a late charge on its internal accounting records is irrelevant to the issue of whether it properly <u>charged</u> Williams for being late.

In this case, Williams was only charged late fees after she did "not pay [the] installment within 5 days after its scheduled or deferred due date" (except, as noted earlier, in December 2010, February 2011, and any other month in which she timely paid at least $102.23). Thus, regardless of how the term "day" is defined or interpreted, on each occasion on which Williams was charged a late charge (except, <u>e.g.</u>, in December 2010 and February 2011), she did not pay the requisite installment within five days of the due date. Because the conditions of the note for the imposition of a late fee were therefore satisfied in each case where a late fee was charged (except, <u>e.g.</u>, in December 2010 and February 2011), we reject her contention that Lendmark somehow violated the promissory note by "assessing" late fees on its books after the close of business on the fifth day of the grace period. Accordingly, we affirm the district court's summary judgment on this issue.

The judgment of the district court is

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>.

15